IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOZSEF KELEMEN,

                Plaintiff,

v.

ASSOC. OF AM. MED. COLLEGES,

                Defendant.

OPINION and ORDER

25-cv-679-jdp

---

Plaintiff Jozsef Kelemen, proceeding without counsel, alleges that defendant Association of American Medical Colleges (AAMC) has violated his rights under Title III of the American with Disabilities Act (ADA) by denying his request for 100% extra time on the Medical College Admission Test (MCAT). Kelemen seeks a preliminary injunction requiring the AAMC to provide 100% extra time before October 2025, so that he can take the MCAT in January 2026 with that accommodation. Dkt. 2 and Dkt. 11. For this relief to be warranted, Kelemen must show, among other requirements, that the absence of this accommodation would cause him irreparable harm. But if Kelemen ultimately succeeds on the merits, he will be able to take the MCAT with 100% extra time at that point. Kelemen would have to wait to take the MCAT with his preferred accommodation, but the delay in potential admission to professional school is not irreparable harm for purposes of preliminary injunctive relief. I will deny Kelemen's motion and I will grant AAMC's motion to seal.

BACKGROUND

A.  **Kelemen's educational background**

Kelemen is 48 years old. Dkt. 18-17 at 2. He completed elementary, middle, and high school in Budapest, Hungary. *Id.* at 3. In 2003, Kelemen earned a law degree in Hungary "in a rigorous law curriculum." *Id.* Kelemen then completed the academic requirements for an economics degree at Szent Istvan University, Faculty of Economic and Social Sciences in Hungary. Dkt. 18-20 at 6–7. In his late 30s, Kelemen "received a prestigious scholarship to conduct independent research at the University of Wisconsin Law School, supported by the European Union," where he apparently served as a "visiting scholar" in 2018 and 2019.[1] More recently, Kelemen began taking prerequisites for medical school with other American universities and he received high grades in those courses. *See* Dkt. 18-23.

B.  **AAMC overview**

AAMC is a nonprofit association that develops the MCAT, a standardized, multiple-choice examination. Dkt. 18 ¶¶ 3–4. The MCAT assesses an examinee's problem-solving abilities, critical thinking, and knowledge of natural, behavioral, and social science concepts and principles that are prerequisite to the study of medicine. *Id.* ¶ 4. Medical schools rely upon MCAT scores as one factor among many in deciding whom they will admit to their programs. *Id.* The MCAT is administered in third-party testing centers and lasts just over seven hours under standard conditions, with six hours of actual testing time. *Id.* ¶ 5.

---

[1] https://law.wisc.edu/researchcenters/newsletters/2018/research_centers_newsletter_-_october.pdf.

### C. Kelemen's requests for MCAT accommodations

Kelemen first sought MCAT accommodations in March 2024. *Id.* ¶ 17. Among other accommodations, Kelemen sought 50% extra time based on "chronic health conditions," i.e., ear pain, migraines, headaches, abdominal pain, and thoracic back pain. Dkt. 18-1 at 2. Kelemen said that those conditions and the effects of his medication caused him discomfort and affected his ability to concentrate and process complex information. *Id.* AAMC approved Kelemen for stop-the-clock and extended breaks, but it denied his request for 50% extended time. Dkt. 18-7 at 2.

In June 2024, Kelemen sought reconsideration of AAMC's denial of his request for 50% extra testing time, and he asked for 100% extra time. Dkt. 18-9. Kelemen generally based the request for reconsideration on medical issues and their effect on his "cognitive abilities." *Id.* at 3. AAMC denied the request for reconsideration, concluding that Kelemen failed to provide substantial new information to support reconsideration. Dkt. 18-11.

Kelemen appealed in September 2024. Dkt. 18-12; Dkt. 18-13. He stated that he had sought objective evaluations of his cognitive ability form clinical psychologists. Dkt. 18-13 at 2. But Kelemen explained that "due to [his] unique background as a foreign-born immigrant who relocated to the United States at the age of 41, [he] was informed . . . that these assessments would not be appropriate for evaluating [his] academic functioning." *Id.* AAMC granted the appeal in part. Dkt. 18-14. Along with the previously approved accommodations, AAMC approved 25% extra time and testing over two days. *Id.* Kelemen sat for the MCAT with his approved accommodations on May 9, 2025, but the test was not scored because he elected to void it. Dkt. 18 ¶ 25.

On May 13, 2025, Kelemen submitted a second request for reconsideration in which he again sought 100% extra time based on a new evaluation conducted by Dr. Bryce Gibbs, a licensed psychologist. Dkt. 18-16. Gibbs diagnosed Kelemen with: (1) Attention-Deficit/ Hyperactivity Disorder (ADHD), Predominantly Inattentive Presentation; and (2) Specific Learning Disorder with Impairment in Reading. Dkt. 18-17 at 6. Gibbs also reported that Kelemen had been diagnosed with dyslexia in 2017 by Hungarian speech therapist Mikonya Hajnalka. *See* Dkt. 18-17 at 2–3, 5–7; Dkt. 18-20 at 10.

In July 2025, AAMC agreed to provide Kelemen with 50% extended testing time over two testing days, along with the previously approved additional breaks. Dkt. 18-24. AAMC explained why 100% extra time was not warranted. AAMC noted that, although Hajnalka diagnosed Kelemen with "residual symptoms of dyslexia," she described his reading pace as normal with no errors and said that his silent reading was 100% correct. *Id.* at 2. AAMC also noted that Gibbs did not "address the impact of English as a second language on the interpretation of test findings, diagnostic formulation, or recommendations for accommodations." *Id.* AAMC added that, although Kelemen had recently been approved for 50% extra time for standardized testing, there was no evidence that he had received extra time to complete his studies. *See id.* at 2–3.

Kelemen appealed that decision. Dkt. 18-26. AAMC then consulted with Richard Sparks, Ed.D., for additional review. Dkt. 18-27. Dr. Sparks concluded that the diagnosis of a reading disability was not supported and recommended that all of Kelemen's accommodation requests be denied. *Id.* Sparks raised numerous issues with the evaluations by Hajnalka and Gibbs, and he suspected that Kelemen's scores on some of the tests that Gibbs administered could have been due to "poor effort or exaggerated cognitive deficits." *Id.* at 10. In August

4

2025, AAMC denied Kelemen's appeal, concluding that his documentation didn't support his request for 100% extra time. *See* Dkt. 18-28.

Later that month, Kelemen submitted another reconsideration request to AAMC that he supported with a new letter from Gibbs. Dkt. 18-30 and Dkt. 18-31.

In response, AAMC consulted with an expert in learning disorders, Dr. Donna Morere. Dkt. 18-32. Morere concluded that 100% extra time was not warranted. *Id.* AAMC then denied that request. AAMC concluded that: (1) Kelemen failed to substantiate Gibbs's statement that Kelemen had struggled with the neurodevelopmental disorders since childhood; (2) Kelemen had generally strong academic performance without accommodations; and (3) Kelemen received a strong score on the Graduate Record Examination (GRE) General Test with only 50% extended time; and (4) Gibbs failed to explain how he ruled out the effect of Kelemen's being a non-native English speaker on his diagnostic tests. *Id.* at 2–3.

In early September 2025, Kelemen submitted another appeal regarding his request for 100% extra time.

**D. Federal litigation**

Meanwhile, on August 12, 2025, Kelemen brought his complaint and an emergency motion for temporary restraining order (TRO). Dkt. 2 and Dkt. 3. I initially set that motion for a hearing by videoconference. Dkt. 7. Kelemen then asked me to convert his motion for TRO into a motion for preliminary injunction and to decide the new motion on the paper record. Dkt. 11. I granted his request. Dkt. 12.

5

ANALYSIS

Kelemen brings a claim under Title III of the ADA. It's undisputed that AAMC is subject to a specific provision of Title III regarding examinations for postsecondary education. It provides: "Any person that offers examinations . . . related to applications . . . for . . . postsecondary education . . . shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. To establish a violation of § 12189, Kelemen must show that: (1) he is disabled; (2) his request for an accommodation is reasonable; and (3) AAMC denied the request. *A.F. v. AAMC*, 678 F. Supp. 3d 952, 962 (S.D. Ohio 2023); *Healy v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, 870 F. Supp. 2d 607, 609 (S.D. Ind. 2012). AAMC doesn't dispute for purposes of Kelemen's motion that he is disabled, and AAMC denied his request for 100% extra time. The basic issue, then, is whether Kelemen's request for 100% extra time is reasonable.

But there's another layer. Kelemen seeks preliminary injunctive relief, so he must establish four elements: (1) he is likely to succeed on the merits on his ADA claim; (2) he is likely to suffer irreparable harm if I do not grant him 100% extra time by October so that he can take the MCAT with that accommodation in January 2026; (3) the balance of equities tips in his favor; and (4) a preliminary injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Kelemen must satisfy each of these elements to obtain preliminary injunctive relief. *See Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020).

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek*

*v. Armstrong*, 520 U.S. 968, 972 (1997); *see also Bevis v. City of Naperville, Ill.*, 85 F.4th 1175, 1188 (7th Cir. 2023) (stating that party seeking preliminary injunction bears burden to show that such relief is warranted). Kelemen seeks a mandatory injunction that would require AAMC to take an affirmative action rather than to maintain the status quo, so he faces a heavier burden. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (stating that mandatory preliminary injunctions "are ordinarily cautiously viewed and sparingly issued").

1.  **Whether Kelemen is likely to succeed on the merits**

As the party seeking preliminary injunctive relief, Kelemen "must make a strong showing that []he is likely to succeed on the merits." *See Pritzker*, 973 F.3d at 762. This is a "significant burden," though Kelemen "need not show that [he] definitely will win the case." *Id.* at 763. A strong showing does not require proof by a preponderance of evidence. *Id.*

A person who is disabled under the ADA is not entitled to the best accommodations or his preferred accommodations, but only to a reasonable accommodation. *AAMC*, 678 F. Supp. 3d at 967. Whether a proposed accommodation is reasonable is a fact-specific inquiry. *Goldman v. Brooklyn Ctr. for Psychotherapy, Inc.*, No. 15-cv-2572, 2018 WL 1385888, at *4 (E.D.N.Y. Mar. 19, 2018).

Kelemen argues, at some length, that only 100% extra time would be reasonable to accommodate his ADHD, specific learning disorder, and dyslexia. Kelemen relies primarily on four factors: (1) the results of the evaluations by Gibbs and Hajnalka; (2) his scores on the GRE taken with 50% extra time; (3) his recent approval for 100% extra time on the GRE; and (4) his decision to cancel the score of his MCAT taken with 25% extra time.

Gibbs administered several diagnostic tests: Comprehensive Trail Making Test, 2nd Edition; Conners Adult ADHD Rating Scales; Integrated Visual-Auditory Continuous

Performance Test, 2nd Edition; Millon Clinical Multiaxial Inventory, 4th Edition; Nelson Denny Reading Test; Wechsler Adult Intelligence Scale, 4th Edition; and Woodcock-Johnson Tests of Achievement, 4th Edition. Dkt. 18-17 at 3. Gibbs determined that despite Kelemen's "strong verbal reasoning scores and superior mathematical aptitude, he exhibit[ed] profound deficits in processing speed, sustained attention, and reading fluency." *Id.* at 7. Gibbs also determined that Kelemen's "attentional impairments . . . manifest as internal distractibility, slowed cognitive tempo, and significant inefficiency under time pressure, particularly in reading-based tasks." *Id.* Gibbs's evaluation provides some support for Kelemen's position that less than 100% extra time makes the MCAT inaccessible. *Cf. Ramsay v. Nat'l Bd. of Med. Examiners*, 968 F.3d 251, 259 (3d Cir. 2020) ("[I]t is within the trial judge's discretion to credit a physician with firsthand observations of a patient over one who only reviewed the patient's records.").

Hajnalka's evaluation seems less probative. The focus of Hajnalka's evaluation was whether Kelemen should be exempted from the foreign language exam requirement for his economics degree. Dkt. 18-20 at 8. Hajnalka diagnosed Kelemen with "residual symptoms of dyslexia (F81.0)," which I take to mean adult dyslexia, and she opined that his "[r]eading accuracy and comprehension [fell] short of expected levels." *Id.* at 10. But Hajnalka's description of the methods used to make these diagnoses is vague. *Id.* at 9. And, as AAMC noted in denying Kelemen's request for 100% extra time, Hajnalka found that Kelemen's "[n]ormal reading pace" showed "no significant errors," and that his silent reading was "100%" accurate. *Id.* at 9–10. Ultimately, Hajnalka determined that Kelemen "could only partially acquire written language skills" because he had issues "with auditory processing and word retrieval." *Id.* But Kelemen hasn't shown a clear relationship between those specific deficits and

8

the deficits in reading, processing speed, and attention that he says make the MCAT inaccessible.

Kelemen also notes that he was approved for 100% extra time on the GRE. "[A] recent history of past accommodations is critical to an understanding of the applicant's disability and the appropriateness of testing accommodations." *Ramsay*, 968 F.3d at 259. But Kelemen has yet to take the GRE with 100% extra time; he only started asking for that accommodation a few months ago. Kelemen has taken the GRE, Test of English as a Foreign Language (TOEFL), and the Casper test with 50% extra time. But there is no evidence that he was approved for that accommodation based on deficits in reading, processing, and attention. Also, Kelemen achieved an advanced score on the reading section of the TOEFL, and average to above-average scores on the GRE. *See* Dkt. 22-1 at 1; Dkt. 22-2 at 1–2. On the GRE, Kelemen scored in the 41st percentile on verbal reasoning, 39th percentile on analytical writing, and 86th percentile on quantitative reasoning. Kelemen says that there is a disparity between his verbal reasoning and analytical scores and his quantitative reasoning score, which he says is consistent with processing speed deficits. Dkt. 21-1 at 19. But Kelemen, as a layperson, is not competent to form that opinion. Kelemen's Casper score was in the 1st to 24th percentile. Dkt. 18-21 at 2. But AAMC argues that this score "is of little relevance given the very different nature of that test and the MCAT." Dkt. 17 at 24 n.12 (citing Dkt. 18-32 at 2). Kelemen hasn't shown a "long history of formal and informal academic accommodations," let alone a history of receiving 100% extra time based on ADHD, specific learning disorder, or dyslexia. *See Kitchens v. United States Med. Licensing Examination*, No. 22-cv-3301, 2023 WL 7230400, at *13 (E.D. Pa. Oct. 31, 2023); *see also Wright v. Nat'l Bd. of Med. Examiners*, No. 21-cv-2319, 2021 WL 5028463, at *6 (D. Colo. Oct. 15, 2021) (plaintiff's recent approval for accommodations after

9

failing licensing examination and lack of history of accommodations during entire educational career weighed against prevailing on merits of ADA claim).

Kelemen notes that he voided his first MCAT. But that result lacks probative value because Kelemen took the MCAT with 25% extra time, not the 50% extra time that AAMC has approved.

AAMC contends that it has provided Kelemen with reasonable accommodations. AAMC notes that it has approved 50% extra time, testing over two days, 30-minute flexible stop-the-clock breaks each day, and extended break periods of 30 minutes between test sections each day. Dkt. 18-28 at 2. AAMC contends that these accommodations are reasonable because: (1) 50% extra time will address Kelemen's impairments in reading and processing; (2) the stop-the-clock and extended break periods will allow Kelemen to manage his symptoms, refresh his attentional and cognitive resources, and refocus without taking away time from testing; and (3) those accommodations meet or exceed accommodations that he has received on other standardized tests. AAMC also says that Kelemen's request for 100% extra time is dubious given his "shifting justification for accommodations," the timing of Gibbs's diagnoses, and other considerations. *See* Dkt. 17 at 23 n.11. AAMC has supported these points with probative evidence, including the evaluations of Sparks and Morere. *Cf. AAMC*, 678 F. Supp. 3d at 967 (considering opinions of AAMC's outside reviewers in concluding that plaintiff failed to show that 25% extended time was unreasonable accommodation for purposes of preliminary injunction motion).

On the present record, it is debatable whether Kelemen has made the necessary strong showing that he is likely to prevail on the merits. But I need not definitively decide this issue because Kelemen's motion falters at the next element: irreparable harm.

### 2. Whether Kelemen has shown irreparable harm

Kelemen seeks a preliminary injunction requiring the AAMC to provide 100% extra time before October 2025, so that he can register for and take the MCAT in January 2026 with that accommodation. But "a delay in obtaining admission to a graduate school for purposes of pursuing professional studies, as distinguished from interruption or termination of attendance already in progress, is not ordinarily considered irreparable injury warranting injunctive relief." *Martin v. Helstad*, 699 F.2d 387, 391–92 (7th Cir. 1983). Several courts have endorsed this rule. *Doe v. New York Univ.*, 666 F.2d 761, 773 (2d Cir. 1981), *superseded by statute on other grounds as stated in*, *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001); *Rothberg v. L. Sch. Admission Council*, 102 F. App'x 122, 125–26 (10th Cir. 2004); *Bach v. L. Sch. Admission Council, Inc.*, No. 13-cv-888, 2014 WL 12987279, at *3 (M.D.N.C. Feb. 4, 2014); *Betts v. Rector & Visitors of Univ. of Virginia*, 939 F. Supp. 461, 465 (W.D. Va. 1996).

Kelemen hasn't shown that the failure to require AAMC to approve 100% extra time so that he can take the MCAT in January 2026 with that accommodation will cause him irreparable harm. If Kelemen ultimately "succeed[s] on the merits, he will be able to take [an MCAT] exam with [100% extra time]." *See Bach*, 2014 WL 12987279, at *3. Kelemen would have to wait to take the MCAT with that accommodation, but the delay in potential admission to medical school is not irreparable harm.

Kelemen contends that he will suffer irreparable harm if he must take the MCAT with 50% extra time. He says that his score will be "depressed" and that a depressed score will permanently remain on his file and lower his chances of medical school admission. *See* Dkt. 21 at 3; Dkt. 21-1 at 5–8. But Kelemen has yet to take the MCAT with 50% extra time, an accommodation that has proved at least partially successful for him on other

11

standardized tests. There's no compelling evidence that Kelemen's score will be depressed if he takes the MCAT with that accommodation. But, even if taking the MCAT with 50% extra time would mismeasure Kelemen's ability, he doesn't have to take the test with that accommodation. Rather, Kelemen can litigate this case to its conclusion and, if ultimately successful, take the MCAT with 100% extra time at that point. Again, that delay is not irreparable harm.

Kelemen also contends that the failure to allow him to take the MCAT with 100% extra time as early as possible in the 2026 admissions cycle will cause him irreparable harm. He explains that medical schools use rolling admissions and the applicants who submit their MCAT scores earlier in the cycle have a greater chance of admission because more seats are open. Dkt. 21-1 at 31–32. But Kelemen has submitted no evidence that applying for medical school later in the admissions cycle would significantly decrease his chances for admission. But, even if that's true, the failure to require the AAMC to allow Kelemen to take the MCAT in January 2026 with 100% extra time would not compel him to apply later in the 2026 cycle. If Kelemen ultimately prevails in this case, he can schedule to take the MCAT at the beginning of a future admission cycle. That result would delay his potential acceptance to medical school, but that delay is not irreparable harm.

To support his contention that the failure to grant preliminary injunctive relief will cause him irreparable harm, Kelemen relies primarily on two cases, *Enyart v. National Conference of Bar Examiners, Inc.*, 630 F.3d 1153 (9th Cir. 2011), and *Bartlett v. New York State Board of Law Examiners*, 226 F.3d 69 (2d Cir. 2000). *Bartlett* lacks relevance because it did not involve a request for preliminary injunctive relief. And both *Barlett* and *Enyart* are inapposite because they involve applicants who had completed law school and were seeking accommodations for

12

state bar examinations. *Bartlett*, 226 F.3d at 75; *Enyart*, 630 F.3d at 1156. Unlike *Enyart*, Kelemen hasn't "demonstrated irreparable harm in the form of the loss of opportunity to pursue [his] chosen profession." *See* 630 F.3d at 1165. There is no compelling evidence that Kelemen would be accepted to medical school if he took the MCAT with 100% extra time, much less that he would ultimately graduate and complete any other requirement to sit for a medical licensing examination. *Cf. Rothberg*, 102 F. App'x at 126 ("Assuming her score has improved, its [e]ffect on her chances for admission is not clear."). "[S]peculative injuries do not justify th[e] extraordinary remedy [of preliminary injunctive relief]." *See E. St. Louis Laborers' Loc. 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005) *see also Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). Kelemen has not shown irreparable harm, let alone made the clear showing necessary to warrant the mandatory preliminary injunction that he seeks.

### 3. Whether the balance of the equities favor Kelemen and if a preliminary injunction is in the public interest

I will consider the third and fourth factors together, but only briefly, because Kelemen hasn't shown irreparable harm and has made only a modest showing that he's likely to succeed on the merits. *Cf. Martin*, 699 F.2d at 391. The balance of the equities favors AAMC because requiring it to allow Kelemen to take the MCAT with "potentially unfair accommodations . . . before a merits determination will affect the comparable validity of the scores of other examinees" and "harm other medical school applicants who tested without an equivalent benefit." *See AAMC*, 678 F. Supp. 3d at 969. Also, AAMC would have "no remedy once it

report[ed] [Kelemen's] scores" obtained with a potentially unfair accommodation of 100% extra time. *See Bach*, 2014 WL 12987279, at *3. Or simply put, "[p]roviding unwarranted accommodations to [Kelemen] could undermine the [MCAT] exam process." *See Wright*, 2021 WL 5028463, at *9. Kelemen's delay in possible acceptance to medical school "and the presumed injury resulting from a [potential] violation of the ADA does not outweigh the permanent injury to [AAMC] because [Kelemen] may . . . redress the [potential] statutory violation at a later time. *See Rothberg*, 102 F. App'x at 126. The public has an interest in the enforcement of the ADA, but "the public also has an interest in the fair administration of standardized tests." *Bach*, 2014 WL 12987279, at *3. On balance, the third and fourth factors favor AAMC.

To sum up the analysis, although Kelemen has made a modest showing that he could succeed on the merits, he hasn't shown irreparable harm. Also, the balance of the equities and the public interest overall support AAMC. I will deny Kelemen's motion for preliminary injunction. I will also give AAMC 21 days to answer the complaint. Once AAMC has answered, the case will be scheduled for a telephonic preliminary pretrial conference with a magistrate judge. If Kelemen seeks an expedited schedule in view of his stated desire to take the MCAT during the 2026 admissions cycle, he can raise that concern to the magistrate judge. I will also grant AAMC's motion to seal.

ORDER

IT IS ORDERED that:

1. Plaintiff Jozsef Kelemen's motion for preliminary injunction, Dkt. 2 and Dkt. 11, is DENIED.

2. Defendant Association of American Medical Colleges may have until October 27, 2025, to answer the complaint.

3. Defendant's motion to seal, Dkt. 20, is GRANTED.

Entered October 3, 2025.

                               BY THE COURT:

                               /s/

                               _____
                               JAMES D. PETERSON
                               District Judge